**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-31021
Summary Calendar

TIMOTHY J. CHARPENTIER,

Plaintiff-Appellant,

VERSUS

MARATHON OIL COMPANY; ET AL.

Defendant,

PHILLIPS PETROLEUM COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
(H-96-CV-529)

October 21, 1998

Before DAVIS, DUHÉ, and PARKER, Circuit Judges.

PER CURIAM:[*]

Appellant Timothy J. Charpentier appeals from an order granting summary judgment to Appellee Phillips Petroleum Company. Finding no error, we affirm.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

BACKGROUND

Charpentier, while employed as a contract worker on a fixed platform located on the Outer Continental Shelf, sustained personal injuries when the wind caught a large piece of plywood and blew it into him. Charpentier alleges that the plywood should have been secured in light of an approaching storm. Charpentier, an employee of Omega Service Industries, Inc., brought suit against Marathon Oil Company, the owner/operator of the platform, and Phillips Petroleum Company which was modifying the existing platform pursuant to an agreement between Marathon and Phillips.

Phillips moved for summary judgment on the grounds that its records reflected that none of its employees were present on the platform on the date of the injury. The district court granted Phillips' motion and dismissed Charpentier's claims against Phillips. Charpentier filed a motion for new trial, which also was denied. Charpentier timely appeals.


ANALYSIS

We review a district court's grant of summary judgment *de novo* using the same standard of review as the district court. *Exxon Corp. v. St. Paul Fire and Marine Insur. Co.*, 129 F.3d 781, 784 (5th Cir. 1997). A party is entitled to summary judgment if it can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once a

movant who does not have the burden of proof at trial makes a properly supported motion, the burden shifts to the nonmovant to show that a summary judgment should not be granted. *Id.* at 321-25. A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57 (1986). When ruling on a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)); *Hansen v. Continental Insur. Co.*, 940 F.2d 971, 975 (5th Cir. 1991).

Needless to say, unsubstantiated assertions are not competent summary judgment evidence. *Celotex*, 477 U.S. at 324. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 115 S. Ct. 195 (1994).

Charpentier first argues that he introduced evidence through the testimony of Paul Denis, another contract worker, and Felix Goodly, a Marathon employee, that Phillips employees were present on the platform and were negligent in failing to secure the plywood. According to Charpentier, this evidence raised a fact dispute as to whether Phillips employees were involved. We

disagree.

Although Denis maintained in his deposition that he saw Phillips employees working with plywood on the deck below, Denis further testified that the only reason he believed the men were Phillips employees was because he saw Phillips stickers on their hardhats.  Phillips introduced documentary evidence that none of its employees were present on that day.  Phillips also introduced an affidavit from an independent contractor stating that Phillips employees passed out Phillips stickers to contractors who then placed them on their hard hats.  The district court correctly concluded that Denis's statements were not based on personal knowledge and amounted to mere speculation.

Charpentier introduced Felix Goodly's deposition testimony and accompanying Marathon daily morning reports which indicate that one Phillips employee was present on the platform that day.  That is the only piece of information one can glean from the reports.  No further evidence was introduced indicating whether that one employee had anything to do with the plywood.  The district court noted that the lawsuit was filed in March 1996, the motion for summary judgment was filed in the early part of 1996, the court granted Charpentier an extension of time to conduct discovery to respond to the motion for summary judgment, and the hearing on the motion occurred in May 1997.  After all that time, Charpentier could not produce any evidence to connect Phillips with the injury at issue.  Charpentier's introduction of the Denis testimony and the Goodly records is not sufficient to prevent summary judgment.

Alternatively, Charpentier contends that there is a genuine issue of material fact in dispute regarding whether Omega's employees were actually the borrowed servants of Phillips. Charpentier failed to introduce any evidence to support this contention. Additionally, even assuming there was a fact dispute as to whether Omega's employees were the borrowed servants of Phillips, we fail to see how that fact is material. Charpentier's Complaint never alleged that Phillips was vicariously liable for the acts of Omega's employees under the borrowed servant doctrine,[2] and the record before us contains no evidence that the Omega employees were negligent. R. Vol. 1:1-6. Charpentier's Complaint alleged that Phillips was vicariously liable due to the actions of its own supervisory representative, Vance Steil (sic), and/or due to the actions of its own workers or workers performing contract services. *Id.*

Phillips can be liable for injuries resulting from the negligent acts of an independent contractor (Omega) only if (1) the liability arises from an ultrahazardous activity or (2) Phillips retained operational control over Omega's acts or expressly or impliedly authorized those specific acts. *See Coulter v. Texaco,*

---

[2]The borrowed servant doctrine usually arises in the context of an affirmative defense whereby a general employer attempts to avoid liability for the actions of its employee by asserting the employee was loaned to another employer. *See Benoit v. Hunt Tool Co.*, 53 So.2d 137 (La. 1975); *Billeaud v. Poledore*, 603 so.2d 754 (La.App. 1st Cir.), *writ denied*, 608 So.2d 176 (La. 1992). However, use of the borrowed servant doctrine as a sword, rather than a shield, is not unprecedented. *See Civello v. Johnson*, 567 So.2d 643 (La.App. 4th Cir.), *writ denied*, 569 So.2d 987 (La. 1990).

5

*Inc.*, 117 F.3d 909, 911-12 (5th Cir. 1997). There is no claim that the activity was ultrahazardous, thus we look to whether Phillips retained operational control over Omega's activities.

The legal relationship between Omega and Phillips is determined from "the contract between them and from their intentions in establishing and carrying out that relationship as manifested in its performance and the surrounding circumstances." *See Hickman v. Southern Pacific Transport Co.*, 262 So.2d 385, 390 (La. 1972). The only evidence Charpentier relied upon to defeat summary judgment was the contract between Phillips and Omega. The contract between Phillips and Omega provides in pertinent part:

> Contractor shall be an independent contractor, and any provisions of this Contract which may appear to give Company or the Company Representative the right to direct Contractor in the performance of the Work, or to exercise a measure of control over the Work, shall be deemed to mean, and shall mean, that Contractor shall follow the desires of Company in the Work to be accomplished only and not in the means whereby it is done. Contractor shall have complete and authoritative control over the Work as to the details of performing the Work.

*Contract*, General Conditions, ¶3.2. Charpentier points out that the contract also provides for the designation of a Phillips company representative and allows Phillips to remove an Omega employee from the project if he is incompetent but does not allow him to be fired from his employment with Omega. We find these provisions insufficient to show that Phillips had operational control over the details of Omega's work. Indeed, the contract belies such a contention. Omega had the responsibility for the safety of its employees and retained the right to hire, fire, or assign its workers. Omega was required to furnish at its expense

6

all required form lumber and welding rod.  Under the contract, Omega kept all employment records with regard to its employees and made all payments to all governmental agencies and third parties as required by law including employment and income taxes.  Omega also was required to provide a competent offshore supervisor and any necessary personnel to be in charge of the work.  Omega controlled the details of its work under the contract.  Accordingly, the judgment of the district court is affirmed.

AFFIRMED.